1

2  **DAVID Z. CHESNOFF, ESQ.**
   Nevada Bar No. 2292
3  **CHESNOFF & SCHONFELD**
   **520 South Fourth Street**
4  **Las Vegas, Nevada 89101**
   **(702) 384-5563**
5  **Attorney for Paul Phua**

6
   **RICHARD A. SCHONFELD, ESQ.**
7  Nevada Bar No. 6815
   **CHESNOFF & SCHONFELD**
8  **520 S. 4th Street**
   **Las Vegas, Nevada 89101**
9  **(702) 384-5563**
10 **Attorney for Darren Phua**

11              **UNITED STATES DISTRICT COURT**
12                  **DISTRICT OF NEVADA**
                      * * * * *
13 UNITED STATES OF AMERICA,          )
                                      )
14          Plaintiff,                )     Case No. 2:14-mj-466-CWH
                                      )
15     vs.                            )
                                      )     **DEFENDANTS' JOINT**
16                                    )     **MOTION FOR PRETRIAL RELEASE**
   WEI SENG "PAUL" PHUA,              )
17 DARREN PHUA,                       )
                                      )
18          Defendant.                )
19 _____)

20

21       COMES NOW, WEI SENT PHUA (hereinafter "Paul"), by and through his attorney,

22 DAVID Z. CHESNOFF, ESQ., and DARREN PHUA, by and through his attorney RICHARD A.

23 SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby Move This

24 Honorable Court for PRETRIAL RELEASE in the instant case.

25 ///

26

27

28

*LAW OFFICES*
*CHESNOFF & SCHONFELD*
*AN ASSOCIATION OF PROFESSIONAL CORPORATIONS*
*520 SOUTH FOURTH STREET*
*LAS VEGAS, NEVADA 89101-6593*
*TELEPHONE 702 - 384-5563*

This Motion For Pretrial Release is made and based upon the attached Memorandum of Points and Authorities, the attached exhibits, the argument of counsel, and any other such evidence as may be presented at the time of hearing.

Dated this ___14th___ day of July, 2014.

Respectfully Submitted:

CHESNOFF & SCHONFELD

_____/s/_____
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
520 South Fourth Street
Las Vegas, Nevada 89101
Attorney for Paul Phua

Respectfully Submitted:

CHESNOFF & SCHONFELD

_____/s/_____
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Attorney for Darren Phua

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     Proposed Conditions of Release:**

From the outset, Defendant Paul Phua and Defendant Darren Phua respectfully submit that the following conditions of pre-trial release will provide assurances to the Court that they are neither a risk of flight nor a danger to the community:

• Paul Phua will post $2,000,000 cash bail with the court;

• Darren Phua will post $500,000 cash bail with the court;

• Paul and Darren will reside at a rented home in Las Vegas where they will be placed on house arrest;

• Nigel Phua, the son of Paul and Brother of Darren, is a student at the Embry Riddle Aeronautical University in Florida is studying to be a pilot and will move to Las Vegas to act as the Third Party Custodian for both Defendants with the understanding of his responsibility to this Honorable Court;

• Paul and Darren will both be placed on pretrial supervision with electronic monitoring, GPS tracking, and daily reporting;

• Paul and Darren will sign extradition waivers;

• Paul and Darren will agree to have no access to the internet and restricted telephone access;

**B.     Procedural History:**

On July 9, 2014, a search warrant was executed at the Villas at Caesars Palace located at 3570 S. Las Vegas Boulevard, Las Vegas, Nevada. The government detained a number of individuals in handcuffs for a prolonged period of time during the execution of the search warrant. Ultimately, there were four individuals that remained detained until the agents concluded their

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 · 384-5563

search.  Those individuals were Paul Phua, his son Darren Phua, Richard Yong and Tang Hui.

The search warrant execution began at approximately 3:30pm and by 5:20pm counsel Richard Schonfeld, at the request of David Chesnoff who was out of the jurisdiction, was physically present at the search location and notified the agents that he was there on behalf of Paul Phua and wanted to speak to Mr. Phua.  Mr. Schonfeld was denied access to Mr. Phua after repeated requests.  Mr. Schonfeld learned that the investigation was assigned to Assistant United States Attorney Kimberly Frayn.

On July 9, 2014, at approximately 5:46pm counsel David Chesnoff contacted Ms. Frayn and again advised that Mr. Schonfeld was present at Caesars Palace and wanted to speak to Mr. Phua.  Mr. Chesnoff advised that if Mr. Phua was being questioned it should cease until he was afforded the opportunity to speak to counsel.  Ms. Frayn advised at that time that she would direct the agents not to question Mr. Phua.

On July 9, 2014, at 7:36pm, while the search warrant was still being executed, counsel Richard Schonfeld advised Ms. Frayn via email that he was also asked to assist Mr. Darren Phua, the son of Paul Phua, as it related to the immediate issues presented.  Mr. Schonfeld requested that the agents not question Darren Phua until such time as he had an opportunity to speak to counsel. Ms. Frayn responded via email that she had conveyed the information to the agents and asked them to cease questioning.  Mr. Chesnoff followed up that email documenting that Mr. Schonfeld was denied permission from the agents to speak to Mr. Phua, that Mr. Phua was not permitted to leave, and therefore the detention was custodial in nature and their rights under the Fifth and Sixth Amendment should be respected.  Notwithstanding the over 5 hours of detention, the four targets were not arrested and all were ultimately released at approximately 9:28pm[1].

---

[1]

Mr. Hui was released first approximately half an hour prior to the other 3 individuals being released.

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 · 384-5563

On July 11, 2014, a letter was sent via email to Kimberly Frayn advising Ms. Frayn that David Chesnoff represented Paul Phua and Richard Schonfeld represented Darren Phua, and that both individuals, through their counsel, would make themselves available to the government should the need arise. See Exhibit A[2].

On July 13, 2014, counsel Michael Pancer was notified that special agent Minh was attempting to contact his client Mr. Hui directly for the purpose of returning property[3]. On July 13, 2014, counsel Chesnoff learned that Special Agent Minh had contacted Paul Phua directly and asked to meet with Paul and the three other individuals for the purported purpose of returning property to them. This direct contact occurred in contravention of the rule of law that the government agent cannot talk directly to represented parties. As a result of that information, counsel David Chesnoff on behalf of Paul Phua and counsel Richard Schonfeld on behalf of Darren Phua attempted to contact Special Agent Minh via telephone. The initial call was either disconnected or S.A. Minh hung up the telephone. No dialogue occurred although Mr. Chesnoff repeatedly identified himself. Immediately thereafter, counsel Chesnoff left a telephone message on S.A. Minh's phone advising the agent that he should not have contact directly with Mr. Paul Phua and that the agent should call counsel Chesnoff to arrange for the return of property, if in fact that was what the agent was attempting to do.

---

[2]

It should be noted that between the time of the search warrant being executed and the time of the letter, all four individuals had counsel representing and all four individuals were physically present at the law offices of Chesnoff & Schonfeld for a joint defense meeting with counsel.

[3]

Mr. Pancer advised Ms. Frayn that he was representing Mr. Hui via email and counsel Donald Re advised Ms. Frayn that he was representing Hui Tang.

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

1

2      Thereafter, S.A. Minh again attempted to reach Mr. Phua via telephone after knowing once

3  again that he was represented.  Mr. Chesnoff then spoke to S.A. Minh who advised Mr. Chesnoff

4  that he did not know who he was or if he was representing Paul Phua and therefore would not talk

5  to Mr. Chesnoff.  He hung up the telephone on Mr. Chesnoff.  Mr. Chesnoff kept attempting to

6
   tell the Agent to contact AUSA Frayn to verify if he truly did not know who Mr. Chesnoff was.
7
8  We would note that numerous agents that participated in the execution of the search warrant were

9  aware of our offices representation as they spoke to counsel Schonfeld at that time.  Mr. Chesnoff

10  then sent a text message to the S.A. Minh's cellular telephone advising him that he should not

11  directly speak to Mr. Paul Phua.  See Exhibit B.  That message was sent at 12:12pm.  Mr.

12  Chesnoff had repeatedly said, during his telephone call with the S.A., that he could communicate

13  any message to Mr. Paul Phua.

14
15      At 12:28 pm on July 13, 2014, counsel Schonfeld representing client Darren Phua sent a

16  text message to Mr. Tom Dwan, a friend of Paul and Darren Phua, asking that Mr. Dwan bring

17  Paul and Darren Phua to meet with Mr. Schonfeld at his office at 1:30pm.  See Exhibit C.  The

18  purpose (as expressed in the message) was to have Mr. Paul Phua, Mr. Darren Phua, and the

19
   remaining two targets (at the request of their counsel) available to surrender to the United States
20
21  Marshal Service in the event that was what the agent was attempting to accomplish.  At

22  approximately 12:31pm counsel Chesnoff requested that Mr. Dwan bring the individuals to the

23  law office immediately and to come directly to the office without making any stops.  Attached

24  hereto as Exhibit D is a declaration from Tom Dwan confirming the fact that he was in the process

25  of going to the Valet area at the Palazzo hotel with Mr. Paul Phua, Mr. Darren Phua, and Mr.

26
27  Richard Yong as directed by counsel in order to make said individuals available to surrender.

28  Also with them was Richard Yong's son. All four of those individuals were arrested in the lobby

   of the Palazzo in the presence of Tom Dwan. The government, from the first conversation with

Ms. Frayn had been advised that counsel would bring their clients in.  Mr. Phua had given his phone number to the agents in order to keep in touch.  Attached hereto as Exhibit E is an Affidavit of Eric Gebauer also attesting that Paul and Darren Phua had not expressed any inclination to leave Las Vegas.

Paul Phua and his son Darren Phua remained in Las Vegas, as did the other individuals, knowing that they were the targets of this investigation.  Mr. Paul Phua, Mr. Darren Phua, Mr. Yong and Mr. Hui all remained in contact with their respective counsel in reference to this matter. At the time of the search warrant execution in this case the government was aware that Mr. Paul Phua has a diplomatic passport from the Republic of San Marino.  The government did not seize that passport.  Mr. Paul Phua is the Ambassador for San Marino to Montenegro.  Moreover, Paul Phua had access to a private plane in Las Vegas, with which he could have traveled out of the jurisdiction if that was his intent.  Notwithstanding that Mr. Phua had no travel restrictions, had possession of his diplomatic passport, and had a private plane available, he remained in Las Vegas to responsibly deal with this investigation.  Moreover, Mr. Phua made himself available to S.A. Minh as demonstrated by their telephone conversations on July 13, 2014. All of the individuals that were targets of the investigation remained in Las Vegas and have demonstrated that they are not flight risks.

The allegations in this case are related to gambling and finances, and therefore none of the Defendants pose a danger to the community.

**C.**     **Statement of the Law**:

**I.**     **General Bail principles**

As the Supreme Court stated in *United States v. Salerno*, 41 US 739, 107 S.Ct. 2095, 95 L.Ed.2nd 697 (1987), in the United States, liberty is the norm, and detention is the *carefully*

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

*limited exception.* The High Court found that the *Act* operates only on individuals who have been arrested for particular extremely serious offenses, and carefully delineates the circumstances under which detention will be permitted. The Court found that the *Act's* extensive procedural safeguards are specifically designed to further the accuracy of the likelihood of future dangerousness determination. Indisputably, the *Bail Reform Act of 1984* allows a court to detain a defendant if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community." It is only under circumstances where the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that it may be reasonably deemed appropriate to order detention of the person.

The Court also addressed the issue of risk of flight. Where the government seeks to detain someone based upon a risk of flight the court has stated that bail must be set by the court at a sum designed to assure the goal of appearance, and no more, citing, *Stack v. Boyle*, 342 US 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). As the court reiterated in *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991), the *Bail Reform Act* requires release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person as required and safety of community.

The factors which must be considered in determining whether there are conditions of release that will reasonably assure appearance of the person and the safety of the community are 1) nature and seriousness of the offense charged; 2) weight of evidence against defendant; 3) defendant's character; 4) physical and mental condition; 5) family and community ties; 6) past conduct; 7) history relating to drug and alcohol abuse; 8) criminal history; and 9) nature and seriousness of danger to any person or community that would be posed by defendant's release;

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

*United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

As the United States Supreme Court stated in the leading case of *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3 (1951), fundamental Fifth and Sixth Amendment values may be irreparably compromised by pretrial detention:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that <u>a person arrested for a noncapital offense shall be admitted to bail.</u> This traditional right to freedom before conviction <u>permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.</u> Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. (Emphasis added).

The Ninth Circuit, in a leading bail case, has emphatically admonished that courts "bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail," *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985), declaring further that, "*only in rare circumstances should release be denied*." *Id.* at 1405 (emphasis added).

Furthermore, the Second Circuit has appropriately cautioned that courts "should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Most significantly, as the Court held in *Motamedi*, "[d]oubts regarding the ***propriety of the release should be resolved in favor of the Defendants***." *U.S. v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) [quoting *Herzog v. United States*, 75 S.Ct. 349, 352 (1955) (Douglas J. in Chambers)](emphasis added). In fact, the *Motamedi* Court, in reference to the "Bail Reform Act" of 1984, has specifically required that pretrial detention orders must be carefully reviewed to insure that the Eighth Amendment mandate has been respected.

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

In *United States v. Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987), the defendant was charged with committing an offense for which a maximum term of ten years or more is prescribed by the Controlled Substances Act. The district court made a probable cause finding which triggered the presumption stated in 18 U.S.C. section 3142(e) that no condition or combination of conditions will reasonably assure the appearance of the person as required. At the detention hearing, counsel for the defendant stated that the imposition of bail, daily reporting, monitoring drug and alcohol consumption, requiring prior approval to leave the county, and requiring the defendant to maintain employment would be reasonable alternatives to detention. The district court did not discuss the viability of any of these conditions, although it did make numerous findings demonstrating that the defendant posed a great risk of flight. *United States v. Fernandez- Alfonso*, concurring opinion by Judge Brunetti.

Justice Brunetti, in his concurring opinion, in *United States v. Fernandez-Alfonso* recognized that:

> A presumptively innocent defendant has a great liberty interest in avoiding pretrial detention. Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act. Because Fernandez-Alfonso attempted to rebut Section 3142(e)'s presumption ... the legislative history [of the Act] requires that the district court discuss conditional release. Its failure to do so makes its finding that no conditions could be fashioned to assure Fernandez-Alfonso's appearance error.

It should be noted that this is not a 3142(e) presumption case. Additionally, it is clear that the Government must establish that no condition or combination of conditions of release would reasonably assure the safety of the community by clear and convincing evidence. See, 18 U.S.C. 1342(f); *United States v. Salerno*, 481 U.S. ___, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Walker*, 808 F.2d 1309 (9th Cir. 1987); and *United States v. Kouyoumdjian*, 601 F.Supp. 1506 (CD Cal 1985).

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 · 384-5563

Here, conditions of bond do exist that will reasonably assure Mr. Paul Phua and Mr. Darren Phua's appearance, their compliance with all court orders, and their non danger to the community at large. These conditions will be discussed below. It must be emphasized that in enacting the "reasonably assure" standard, Congress merely "codified existing authority to detain persons who are serious flight risks." S.Rep. No.98-255, 98th Cong. 2d Sess. 4,, reprinted in 1984 U.S. Code Cong. And Admin. News, 3182, 3201. The "existing authority" at that time was exemplified by *United States v Ramirez*, 589 F. Supp. 137 (D. Minn 1984); *United States v. Schiavo*, 587 F.2d 532 (1st Cir. 1978).

Recognizing this very principle, the Court, in *United States v. Meinster*, 481 F. Supp. 1117 (S.D. Fla. 1979), held that to revoke bond based upon likelihood of flight "The United States must demonstrate by the totality of the circumstances ... that there is no reasonable assurance that the defendant will continue to appear for trial and at sentencing..." *Id.* at 1122. *See also United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (not only should doubts regarding the propriety of release be resolved in favor of the defendant, but that "only in rare circumstance should release be denied").

## II. A Non Citizen Defendant Must be treated like any other Defendant for Bail Purposes unless the Government Elects to Forego his Criminal Prosecution in Favor of Removal Proceedings. ICE detainers are not a factor for consideration in a bail determination hearing[4].

While Mr. Paul Phua and Mr. Darren Phua traveled here and entered the country legally, it is anticipated that the government will argue for detention based on their citizenship and/or immigration status. That argument should be rejected by this Honorable Court. Congress has

---

[4] Counsel does not believe that there is an Ice Detainer as both Paul Phua and Darren Phua entered the Country legally and were granted Visas.

decreed that a judicial officer shall order that an arrested person be released or detained pending judicial proceedings. 18 U.S.C. § 3141(a). Upon the appearance of a person charged with an offense, the judicial officer must issue an order that, pending trial, the person be 1.) released on his own recognizance or unsecured bond; 2.) released on conditions; 3.) temporarily detained to permit deportation; or 4.) detained. 18 U.S.C. § 3142(a). Congress has mandated that the judicial officer shall order the pretrial release of the person on preferred conditions " unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b)(emphasis supplied).

It is well-settled that Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings. *See* 18 U.S.C. § 3142(a)(3) and (d). *See Castro-Jnzunza,* No. 12-30205, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012); *United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D.Fla.2001) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings."); *United States v. Montoya-Vasquez,* 2009 WL 103596,4 (D. Neb. Jan. 13, 2009); *United States v. Villanueva Martinez,* 707 F. Supp. 2d 855, 858 (N.D. Iowa 2010) (holding that pending immigration proceedings are too speculative to evidence of non-appearance (citing *Montoya Vasquez)); United States v. Marinez-Patino,* 2011 WL 902466, 6 (N.D. Ill. Mar. 14, 2011) (rejecting the use of an ICE detainer as part of the risk of flight analysis because it did not create a risk of defendant fleeing, and deportation is not among the statutory factors for bail in § 3142(g)); *United States v. Adomako,* 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001); *United States v. Perez,* 2008 WL 4950992 (D. Kan. 2008) (ordering release in spite of detainer); *United States v. Castro-Inunza,* 2012 WL 1697401,7-8 (D. Ore. May 14, 2012), *rev'd United States v. Castro-Inunza,* No. 12-

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 · 384-5563

30205, slip op. at 2 (9th Cir. July 23, 2012); *U.S. v. Trujillo-Alvarez,* 900 F.Supp.2d 1167, 1180 (D. Or. Oct. 29, 2012) (ordering release in spite of both an immigration detainer and a reinstatement of removal order). *See also United States v. Xulam,* 84 F. 3d 441, 444 (D.C. Cir. 1996) (ruling that because the government had never moved for temporary detention under§ 3142(d), they could not then later argue for detention because of possible deportation).

Courts have rejected a detainer as evidence supporting pre-trial detention because that would amount to a *per se* rule against release for anyone subject to an ICE detainer.  For example, in *United States v. Barrera-Omana,* 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009), the court ordered the defendant to be released from custody in spite of the detainer.

Also, in *United States v. Montoya-Vasquez,* the District Court of Nebraska combined these concerns about the speculative nature of deportation proceedings and the impropriety of a *per se* rule against bail for defendants with an ICE detainer:

> If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. ***Such a harsh result is nowhere expressed or even implied in the Bail Reform Act ... If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.***
>
> ***Further, had Congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of the separation of powers.***

*Montoya-Vasquez,* 2009 WL 103596 at 5 (emphasis added).

As such, courts in the Ninth Circuit's jurisdiction have the authority to release a defendant on bail even if there is an ICE hold. *See also, e.g., United States v. Luna-Gurrola,* No. 2:07-mj-01755, Dkt 24, 15 (C.D. Cal. Nov. 20, 2007); *Castro-Jnzunza,* No. 12-30205, 2012 WL 6622075,

at *1 (9th Cir. July 23, 2012).

In the case of a non-citizen defendant, if ICE elects not to take custody, then the bail statute provides that the defendant's bail application should be adjudicated under the regular provisions of Section 3142.

The Ninth Circuit has consistently held that "Only in rare cases should release be denied." *Townsend*, 897 F.2d at 994. Moreover, "Doubts regarding the propriety of release are to be resolved in favor of defendants." *Id.* Here, there is no doubt that Mr. Paul Phua and Mr. Darren Phua should be released on bail with conditions, and the government cannot meet its burden to warrant pre-trial detention.

## III.   The Government May Obtain a Departure Control Order to Delay Removal Until the Conclusion of the Criminal Case.

As a practical matter, the district court frequently will require surrender of the defendant's passport or other travel documents as a condition for pretrial release. 18 U.S.C. § 3142(c)(l)(B)(iv); *cf Xulam*, 84 F.3d at 443. Without such travel documents, ICE will not be able to carry out the defendant's removal. *See* 8 C.F.R. § 241.4(g)(2) (directing ICE to obtain travel documents in order to effectuate removal). Moreover, where ICE has issued a removal order for a defendant whom  the district court has released under the Bail Reform Act, the United States Attorney's Office may avail itself of a regulatory mechanism-namely, a departure control order-for delaying a defendant's removal. Upon the request of any prosecuting authority-whether federal or state-ICE will delay the removal of a noncitizen who is a defendant in a criminal case. The Department of Homeland Security and the Department of State have promulgated identical regulations enumerating specific categories of noncitizens whose departure is deemed "prejudicial to the interests of the United States." 8 C.F.R.§ 215.3; 22 C.F.R.§ 46.3.

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

One subsection of those regulations specifically lists certain criminal defendants as among

those whose departure would be "prejudicial":

> Any alien who is needed in the United States as a witness in, or as a party to,
> any criminal case under investigation or pending in a court in the United
> States: *Provided,* That any alien who is a witness in, or a party to, any
> criminal case pending in any criminal court proceeding may be permitted to
> depart from the United States with the consent of the appropriate prosecuting
> authority, unless such alien is otherwise prohibited from departing under the
> provisions of this part.

8 C.F.R. § 215.3(g) (emphasis in original); *see also* 22 C.F.R. § 46.3(g) (same).

An accompanying regulation provides that:

> [an ICE] departure-control officer who knows or has reason to believe that the
> case of an alien in the United States comes within the provisions of § 215.3
> shall temporarily prevent the departure of such alien from the United States
> and shall serve him with a written temporary order directing him not to depart,
> or attempt to depart, from the United States until notified of the revocation of
> the order.

8 C.F.R. § 215.2(a); *see also* 22 C.F.R. § 46.2(a) (same).

The temporary order becomes final 15 days after service upon the noncitizen, unless he

requests an administrative hearing before a special inquiry officer. 8 C.F.R. § 215.2(b); 22 C.F.R.

§ 46.2(b). Thus, once a prosecutor informs ICE that a noncitizen is a defendant in a criminal case,

ICE shall not remove that noncitizen from the United States.

Indeed, numerous federal district courts have released criminal defendants on bail, noting

the use of a departure control order to block the removal of the defendant. *See, e.g., United States

v. Morales,* No. 11-cr-20132-09-KHV-DJW, 201 2 WL 603520, at *2 (D. Kan. Feb. 24, 2012)

(rejecting prosecution's argument that defendant posed flight risk because of ICE detainer and

noting that 8 C.F.R. § 215.3 prevents departure unless prosecution consents); *United States v.

Lozano-Miranda.* No. 09-cr-20005-KHV-DJW-5. 2009 WL I 13407, at *3 n.13 (D. Kan. Jan. 15,

2009) (same); *see also United States v. Lopez-Aguilar,* No. CR 93-209, 1996 WL 370160, at *3

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 · 384-5563

(E.D.N.Y. Jun. 28, 1996) *partially vacated on other grounds by United States v. Londono,* 100

F.3d 236 (2d Cir. 1996) (admonishing the prosecutor for failing to make use of a departure control

order to prevent the deportation of defendant before sentencing).

In addition, it must be noted that ICE generally has broad authority to stay a noncitizen's

removal from the United States as "appropriate." 8 C.F.R. § 241.6(a) (agency "may grant a stay of

removal or deportation" to noncitizen with final removal order "for such time and under such

conditions as ... deem[ ed] appropriate"); *see also Arizona v. United States,* 132 S.Ct. 2492, 2499

(2012) ("A principal feature of the removal system is the broad discretion exercised by

immigration officials," including the discretion over "whether it makes sense to pursue removal at

all"); *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 483-84 (1999) ("the

Executive has discretion to abandon" immigration cases at any stage of the litigation, including

"execut[ing] removal orders") (alteration in original); Memorandum from John Morton, Director,

Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities

of the Agency for the Apprehension, Detention, and Removal of Aliens, at 3 (June 17, 2011),

*available at* http://www. ice.gov/doc lib/secure-communities/pdf/prosecutorial-

discretionmemo.pdf (noting agency's discretion to stay removal).

As detailed herein, while Mr. Paul Phua and Mr. Darren Phua are not United States

citizens, the case law across the country is clear that Mr. Paul Phua and Mr. Darren Phua can be

released on bail, and must be afforded this right under due process.

## IV. CONDITIONS CAN BE FASHIONED THAT WILL PROVIDE THE NECESSARY ASSURANCES THAT MR. PAUL PHUA AND MR. DARREN PHUA WILL APPEAR FOR TRIAL AND WILL NOT BE A DANGER TO THE COMMUNITY

Mr. Paul Phua and Mr. Darren Phua request that they be released on house arrest to a home that they will lease in Las Vegas. They also request pretrial supervision with electronic monitoring, tracking through the Global Positioning System, and a daily reporting requirement. Moreover, they will agree to an internet prohibition and restrictions on telephone access.

Additionally, as reflected in the attached Affidavit of Nigel Phua, (Exhibit F) if the Court feels it necessary he will move to Las Vegas and act as a third party custodian over his Dad and his Brother. Nigel recognizes that if he fails to inform the court of a violation of the conditions of release, he will be subject to punishment by the Court and potential prosecution. Nigel Phua represents that he would not risk his career as a pilot and his future in the United States and elsewhere, if he was not absolutely sure that his father and Brother will abide by conditions of release. Moreover, Nigel represents that his Dad and his Brother would not place his future career in jeopardy.

Additionally, Mr. Paul Phua will post $2,000,000 cash bail and Mr. Darren Phua will post $500,000 cash bail with the Court. Attached hereto as Exhibit G is a Declaration from Andrew Robl outlining that he will be posting $1,500,000 of said bail from poker winnings, as a result of his profession of being a poker player. Mr. Robl has been friend with Paul Phua for approximately four years. The additional funds will be coming from other professional poker players in the Las Vegas community[5].

---

[5] While the facts of the case are given the least weight, it should be noted that the Complaint is deficient and outlines allegations of mere betting which does not fall within restricted conduct under federal law.

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

As the above cited case law makes clear, Mr. Paul Phua and Mr. Darren Phua have the right to be released on bail even though they are not U.S. citizens. Accordingly, the standard bail analysis applies and the government cannot argue that an immigration detainer is dispositive of the issue of Mr. Paul Phua and Mr. Darren Phua's ability to receive a pre-trial release. As such, they respectfully submit that the requested conditions are sufficient to warrant their pre-trial release.

IV.    **CONCLUSION**

In light of the foregoing, Mr. Paul Phua and Mr. Darren Phua offer the following bail proposal:

- Paul Phua will post $2,000,000 cash bail with the court;

- Darren Phua will post $500,000 cash bail with the court;

- Paul and Darren will reside at a rented home in Las Vegas where they will be placed on house arrest;

- Nigel Phua will act as the Third Party Custodian for both Defendants with the understanding of his responsibility to this Honorable Court;

- Paul and Darren will both be placed on pretrial supervision with electronic monitoring, GPS tracking, and daily reporting;

- Paul and Darren will sign extradition waivers;

- Paul and Darren will agree to have no access to the internet and restricted telephone access;

/ / /

LAW OFFICES
CHESNOFF & SCHONFELD
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593
TELEPHONE 702 - 384-5563

In addition to the strong family support, community support, and lack of criminal convictions, it is respectfully submitted that there are conditions that can be fashioned to assure this Honorable Court that Mr. Paul Phua and Mr. Darren Phua will appear for trial and will not be a danger to the community.

DATED this ___14th___ day of July, 2014.

Respectfully Submitted:

CHESNOFF & SCHONFELD


_____/s/_____
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
520 South Fourth Street
Las Vegas, Nevada 89101
Attorney for Paul Phua

Respectfully Submitted:


CHESNOFF & SCHONFELD


_____/s/_____
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Attorney for Darren Phua

# EXHIBIT A

LAW OFFICES

*Chesnoff & Schonfeld*

AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

520 SOUTH FOURTH STREET

LAS VEGAS, NEVADA 89101-6593

DAVID Z. CHESNOFF, CHARTERED
RICHARD A. SCHONFELD, CHARTERED

ROBERT Z. DeMARCO

TELEPHONE
(702) 384-5563

FAX
(702) 598-1425

July 11, 2014

VIA ELECTRONIC MAIL

Kimberly Frayn, Esq.
Assistant United States Attorney
Lloyd D. George Federal Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, NV 89101

Dear Kimberly,

     As you are aware I represent Paul Phua and Richard Schonfeld represents Darren Phua related to the search warrants that were executed at 3570 S. Las Vegas Boulevard on July 9, 2014, and the investigation related thereto.

     To that end, we are providing you with notice that Mr. Paul Phua and Mr. Darren Phua will make themselves available to you and/or your agents, through our office, should the need arise.

     Additionally, we will follow up with you on Monday via telephone regarding the underlying investigation.

     Thank you for your attention to this matter and have a nice weekend.

          Sincerely,

          CHESNOFF & SCHONFELD

          (by Ros)

          David Z. Chesnoff, Esq.

# EXHIBIT B

**Richard Schonfeld**

**From:**
**Sent:**                    Sunday, July 13, 2014 1:42 PM
**To:**                      Richard Schonfeld


Special Agent. I am Paul's attorney. My name is Davis Chesnoff. I have been an attorney in LV for over 30 years. Ms. Frayn has acknowledged my representation of him. You are violating Massiah. If you wish to speak to him call me at 702-384-5563 or 702-496-▮▮▮▮. I note you refused to talk to me and hung up. David Chesnoff.

Sent from my BlackBerry 10 smartphone.

**EXHIBIT C**

**Richard Schonfeld**

**From:**
**Sent:**                    Sunday, July 13, 2014 1:49 PM
**To:**                      Richard Schonfeld

Tom, please have Paul, Darren, Mr. Pancer and Mr. Re's clients come to my office today at 130pm so we are in
a position to walk across to the courthouse and surrender them, in the event that is what the agent is actually
(although not represented to us or Paul) trying to accomplish.

Sent from my BlackBerry 10 smartphone.

**EXHIBIT D**

# AFFIDAVIT OF THOMAS DWAN

State of Nevada     )
                    ) ss
County of Clark     )

I, Tom Dwan, being first duly sworn, hereby depose and state as follows:

1.  On July 13, 2014, I was physically present with Paul Phua when he was attempting to inform FBI Special Agent Minh that David Chesnoff was his lawyer and to contact David Chesnoff directly. Special Agent Minh talked over Mr. Phua and repeatedly disregarded the request;

2.  At approximately 12:31 I had a telephone call with David Chesnoff and Richard Schonfeld wherein they requested that I immediately bring Mr. Paul Phua and Mr. Darren Phua to their law office for the purposes of those individuals being available to surrender to law enforcement if necessary;

3.  I immediately left the hotel room with Paul Phua, Darren Phua, and Richard Yong, the purpose of bringing them to the law offices as directed. Richard Yong's son was also with us. After leaving the hotel elevator I asked a security guard for directions to the Valet area, as I did not want to get lost and wanted to follow Mr. Chesnoff's instruction that I take the directly to the law office without stopping and without appearing to have a desire to go anywhere other than the law office;

4.  As we approached the hotel lobby FBI agents arrested Mr. Paul Phua, Mr. Darren Phua, Richard Yong and Richard Yong's son;

5.  Prior to leaving the hotel I had informed Paul and Darren Phua, as well as Richard Yong, once again, that it was likely that they were going to have to surrender to the authorities and that the surrender would occur at Mr. Schonfeld's office. This is something that had been discussed previously and all of those individuals were aware of the possibility that they could be arrested and/or required to surrender in the coming days/weeks. None of those individuals exhibited or expressed any hesitation on going to Mr. Schonfeld's office and advised me again that they would surrender if that was requested of them. At the time of their arrest we were in the process of going to Mr. Schonfeld's office for purposes of a potential surrender.

Dated this 13 day of July, 2014.

_____
THOMAS DWAN

Subscribed and Sworn to before me
this 13 day of July, 2014.

_____
Notary Public in and for said State and County

NOTARY PUBLIC
ROSEMARY REYES
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. MAR. 12, 2017
No: 09-97235-1

# EXHIBIT E

# AFFIDAVIT OF ERIC GEBAUER

State of Nevada     )
                     ) ss
County of Clark     )

I, Eric Gebauer, being first duly sworn, hereby depose and state as follows:

1.    I have known Paul Phua and Richard Yong for approximately two years. I have also met Darren Phua previously;

2.    I have seen Paul Phua and Richard Yong in Las Vegas on three separate occasions;

3.    On this trip I was aware that Paul Phua, Darren Phua and Richard Yong's Villas had been the subject of a search warrant by the federal authorities;

4.    I saw Paul Phua, Darren Phua, and Richard Yong on at least two and possibly three separate occasions after the execution of the search warrant at Caesars Palace. On each occasion we had communication that they were interested in ascertaining the basis of the investigation and that they wanted to deal with the investigation in a responsible manner and through its conclusion. I never had the sense that they were planning on leaving Las Vegas prior to having the permission of the federal government. To the contrary, I was always given the impression that they were stuck in Las Vegas until the conclusion of this matter.

Dated this _/3_ day of July, 2014.



ERIC GEBAUER

Subscribed and Sworn to before me
this _/3_ day of July, 2014.

Notary Public in and for said State and County

NOTARY PUBLIC
ROSEMARY REYES
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. MAR. 12, 2017
No: 08-97235-1

**EXHIBIT F**

## AFFIDAVIT OF NIGEL PHUA

State of Florida    )
                   ) ss
County of Volusia   )

I, Nigel Phua, being first duly sworn hereby depose and state as follows:

1.     I am the son of Paul Phua and the brother of Darren Phua;

2.     I am currently residing at 600 S. Clyde Morris Boulevard, Daytona Beach, Florida 32114;

3.     I am attending the Embry Riddle Aeronautical University studying to be a pilot. The program that I am enrolled in is a four year program, which also requires an additional two years of participation as a flight instructor before I will become a pilot;

4.     I understand that my dad Paul Phua and my brother Darren Phua have been arrested in Las Vegas, Nevada, and are accused of having committed illegal gambling offenses. I am confident that both my dad and my brother will abide by all conditions of release ordered by the Court, will attend all of their court appearances, and will abide by any travel restrictions;

5.     I am willing to move to Las Vegas and take a semester off from school so that I can act as third party custodian for my dad and my brother. I understand that as a third party custodian I will be responsible for making sure that my dad and my brother comply with all conditions of release. I further understand that I will be responsible to report to the Court if either my dad or my brother violates any condition of release. I further understand that if I fail to report a violation to the Court I will be subject to punishment by the Court and could myself be charged with a criminal offense;

6.     I would not risk my future career as a pilot in order to support by dad and my brother if I was not absolutely convinced that my dad and brother will both abide by all conditions of their release. Additionally, neither my dad nor my brother would place my future career as a pilot in jeopardy by violating the conditions of their release.

Further Affiant Sayeth Naught.

_____
NIGEL PHUA

Subscribed and Sworn to before me
this 14 day of July, 2014

_____
Notary Public in and for said State and
County

DANIEL BROWN
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE870164
Expires 1/30/2017

# EXHIBIT G

### DECLARATION OF ANDREW ROBL

State of Nevada    )
                  ) ss
County of Clark    )

I, ANDREW ROBL, being first duly sworn hereby depose and testify as follows:

1.      That I am a resident of Las Vegas, Nevada;

2.      That I am a professional poker player in Las Vegas, Nevada. I have been a professional poker player for over nine years. In my professional poker career, I have played in approximately 100 professional live poker tournaments, and have played in events broadcasted on ESPN, NBC, and Fox;

3.      I have been friends with Paul Phua for approximately four years;

4.      That I will post a $1,500,000 cash bond to secure Mr. Paul Phua and his son, Darren Phua's release;

5.      Said funds will come from an Aria Hotel and Casino check as a result of me exchanging poker chips that I won playing poker at the Aria. These funds are my personal winnings from poker and are completely independent from Paul Phua and Darren Phua.

Dated this __14__ day of July, 2014.


                                   _____
                                   **ANDREW ROBL**

Subscribed and Sworn to before me
this __14__ day of July, 2014.


_____
Notary Public

NOTARY PUBLIC
ROSEMARY REYES
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. MAR. 12, 2017
No: 05-97235-1